HAINES, Appellant, v. NEECE et al., Respondents.

St. Louis Court of Appeals, February 13, 1906.

1. **SALES: Agency.** Where a retail dealer brought together a purchaser and the agent of a wholesale dealer, and the agent of the wholesale dealer consummated as sale with the purchaser, though the merchandise was shipped to the retail dealer and he became liable to the wholesale dealer for the same and the wholesale dealer supposed him to be the purchaser, and the purchaser paid the retail dealer a commission upon the sale, the retail dealer in such case was the agent of both the seller and the purchaser.

2. ———: **Express Warranty.** An express warranty is where the seller makes some positive representation or affirmation with respect to the articles sold upon which he intends the purchaser to rely in making the purchase.

3. ———: ———: **Pleading.** Where a purchaser of chattels sued the seller on account of defects in the chattels sold alleging that the defendant agreed the articles should be first-class and suitable for the purpose for which they were purchased, and the plaintiff thereupon agreed to pay a first-class price for the same, it was an action upon an express warranty.

4. ———: ———: ———: Instruction. And in such case an instruction to the jury based upon the theory of an express warranty which failed to define the meaning of express warranty, was cured by another instruction directing the attention of the jury to the particular claim of warranty alleged in the petition.

5. ———: ———: ———: ———: Harmless Error. And in such case, where the petition sounded on express warranty and there was no evidence of an implied warranty, an instruction upon the theory of an implied warranty, which could not have misled the jury, was harmless error.

Appeal from Lawrence Circuit Court.—*Hon. Henry C. Pepper*, Judge.

AFFIRMED.

*Thos. F. T. Whitney* and *H. H. Bloss* for appellant.

(1) The instructions now under consideration did not follow the pleading of the defendant; the instructions must be based on the evidence and the pleadings both. The allegation in the pleading is that defendants ordered the goods as agents at plaintiff's request for a fixed commission, and this instruction assumed that the evidence was that they had acted as the agents of Costuba. This would have been error in view of the pleading had the evidence authorized such instruction. Kirby v. Railroad, 85 Mo. App. 345; Bank v. Armstrong, 62 Mo. 69; Wilmot v. Railroad, 106 Mo. 535, 17 S. W. 490. (2) Since the contract of sale was made by Neece Brothers admittedly in their own name, they were liable as principals notwithstanding they may have acted as the agents of Costuba or Jacob Keiser, of which there was no evidence. And the first instruction was unwarranted by the admitted evidence that the contract was so made. Bradshaw v. Cochran and Burnham, 91 Mo. App. 296; Ziegler v. Fallon, 28 Mo. App. 298; Hovey v. Pitcher, 13 Mo. 192; Lapsley v. McKinstry, 38 Mo. 245; Heath v. Goslin, 80 Mo. 310; Leckie v. Rothenbarger,

82 Mo. App. 617; Schell v. Stephens, 50 Mo. 375. (3) What we think was the next error of the court that we desire to call attention to is the giving instruction numbered three to the jury for the defendants. This instruction was erroneous in predicating any tendency of evidence to prove that Neece Brothers acted as agents of Jacob Keiser for all the reasons already urged, and further predicating a sale of property in the possession of Neece Brothers when all the evidence was that the property had to be ordered from St. Louis. It is subject to objection also as being absolutely inconsistent with the second instruction that the court gave to the jury for defendants, for in that instruction he told the jury that the only theory on which the plaintiff could recover in the case was by proving an express warranty. Lee v. Sickles Saddlery Co., 38 Mo. App. 201; Miller & Co. v. Hunter, 82 Mo. App. 632; Keystone Imp. Co. v. Leonard, 40 Mo. App. 477; Creasy v. Gray, 88 Mo. App. 454; Schoenberg v. Loker, 88 Mo. App. 387.

*Edward J. White* for respondents.

"An agent who discloses his principal is not liable, except on an express contract." Thompson v. Irwin, 76 Mo. App. 418; Huston v. Tyler, 140 Mo. 266, 36 S. W. 654, 41 S. W. 795; Whitney v. Wyman, 101 U. S. 392. The second instruction is correct, for when an express contract of warranty is declared upon, no recovery is permitted upon an implied contract. International Pavement Co. v. Machine Co., 17 Mo. App. 264.

BLAND, P. J.—Omitting caption, the petition is as follows:

"Plaintiff for cause of action states, that during all the times hereinafter mentioned, the defendants were engaged in the furniture business as copartners under the firm name and style of Neece Brothers.

"That on the — day of October, 1903, the plaintiff

purchased of the defendants twenty-eight combination mattresses and springs, which as the defendants were then and there at the time of such purchase advised by the plaintiff were to be used in the hotel building then owned by the plaintiff in the city of Aurora and according to the contract of purchase then and there entered into between the plaintiff and defendants the said combination springs and mattresses should and were to be of first-class style, make and pattern and suitable for a first-class hotel business and were to be of a first-class grade and condition, and the plaintiff thereupon agreed to pay a first-class price or one suitable to the articles or merchandise he was purchasing and agreed that it should be $15 apiece or an aggregate price of $420.

"That in accordance with said contract thereafter, on the —— day of November, 1903, the defendants delivered to plaintiff the number of combination springs and mattresses agreed but in derogation and violation of said contract, delivered to plaintiff unfit, unsuitable and utterly inferior and unserviceable set of combination springs and mattresses than those agreed to be sold and delivered and as a result of the unfit and inferior condition and grade of said mattresses and springs they have worn out in the short term of six months or thereabout and will now have to be replaced with new ones, whereas had they been of the kind that they should have been would have stood service for twenty years or more.

"That at the time of delivery of said mattresses and springs, the plaintiff was unfamiliar with such articles of merchandise and did not know the kind and grade of mattresses and springs he was receiving from the defendants and being so ignorant of such information, he accepted said goods and paid the entire purchase price agreed on, to-wit, four hundred and twenty dollars that thereafter by use and service to which said mattresses and springs furnished.

"That said springs and mattresses were and are entirely worthless and valueless to this plaintiff and he has

thereby suffered damages in the sum of four hundred and twenty dollars for which with costs he asks judgment."

The answer denied, specifically, that defendants sold the mattresses to the plaintiff, and denied, generally, all other allegations of the petition. Further answering, defendants alleged:

"That the only connection they had with the purchase of such mattresses by he plaintiff was in the sole capacity of agents. That at the special instance and request of the plaintiff they permitted him to order said mattresses in their names for a fixed commission and charge, less than ordinary profit which they would have received for a purchase of said mattresses from them direct; that by introduction they brought the plaintiff face to face with the vendor of said mattresses and did not even know the kind of mattresses that he had ordered until their arrival in their car of furniture. That the defendants had advised the plaintiff to buy a different make of mattresses from those described in the petition, but after a personal negotiation with the vendor the plaintiff purchased said mattresses of his own volition and upon his own responsibility.

"Further answering defendants say that although they received a small commission in the transaction they were not the vendors of the mattresses described, but the same were purchased direct from a wholesale furniture dealer in the city of St. Louis, Missouri, and that said mattresses were delivered direct by said vendor to the plaintiff; that the plaintiff received, unboxed and set up the same in his hotel in Aurora, Missouri, and ever since said acceptance and receipt of said mattresses by the plaintiff the same have been constantly in use by the plaintiff in his hotel and said mattresses now, are and will long continue to be an attractive feature of said hostlery on account of the ease and comfort which they afford plaintiff's guests.

"Further answering defendants deny that said mat-

tresses were unfit, unsuitable, inferior or unserviceable for the purpose for which they were sold, but aver that the same were first-class in every particular. Defendants deny that plaintiff was ignorant of the kind of mattresses he was buying or that he ever offered to return said mattresses to the defendants, deny that said mattresses are worthless or that the plaintiff is entitled to recover any part of the purchase price therefor, particularly as against the defendants who had nothing to do with his selection or purchase of said mattresses, except as herein set forth."

Defendants were partners engaged in the sale of furniture at retail, in the city of Aurora, Missouri. Plaintiff is the owner of the Bank hotel, in said city, which he had leased to one Edwards. Plaintiff, desiring to furnish the hotel with twenty-eight box-spring mattresses, went to defendants with a view of buying them. Defendants did not have the mattresses in stock but informed the plaintiff that J. W. McCoy, a traveling salesman for furniture houses, in the city of St. Louis, would be along in a few days and arrangements could then be made to procure the mattresses. McCoy arrived in Aurora a short time thereafter and the mattresses were ordered through him, and in due time thereafter were shipped from the city of St. Louis, by the manufacturer, C. J. Costuba, consigned and billed to the defendants. On their arrival and the receipt of Costuba's invoice, the mattresses were delivered to plaintiff by defendants and installed by plaintiff in the hotel. Defendants turned the invoice over to plaintiff and he paid them the invoice price, plus five per cent as their commission, and the railroad freight charges.

The evidence in regard to the quality of the mattresses is conflicting, that of plaintiff tends to show they were of a very inferior quality, made of poor material and were almost worthless; that of defendants tends to show they were well and skillfully made of first-class material and were first-class mattresses. There is a

sharp conflict in the evidence in regard to the real parties to the contract of sale and purchase of the mattresses. On this branch of the case, plaintiff testified as follows: "I went to Mr. Neece and told him I was going to furnish the hotel and would sooner buy them (the mattresses) in town than out of town, then he said he would like to sell me and we talked about the matter several times. They had same catalogues there and said they would write to their traveling man and have some more catalogues and have their man come down, and he finally came, and they didn't have no catalogues with combination box mattresses, and the traveling man finally came and brought those catalogues, and I told Mr. Newt. Neece if they would send me something like that I would be willing to take them, and the price of them was $18.50, the kind I bought, and I told Mr. Neece I didn't believe I could stand that much. Well, he said he didn't know that they could make them for that, that he would send them into the house and if they could make them they would find out and let me know, and some time later they came and said the goods had come for me, and they had them hauled up to my house and they put them in and unpacked them. The goods at the time looked to be all right. I put them in the house." Witness also stated that the mattresses were to be "spring mattresses with a steel band around them and tied with wire, the first quality, best that was made, at fifteen dollars each;" and that he agreed to pay defendants five per cent on the invoice price as their commission; that all his negotiations for the purchase of the mattresses were with defendant J. N. Neece, who, on the part of the defendants, testified as follows:

"I am one of the defendants in this case. I did not sell Mr. Haines any mattresses from my stock of goods. I didn't have any contract with Mr. Haines; Mr. McCoy sold him the mattresses. Mr. McCoy is a traveling salesman for three or four St. Louis houses. Mr. Haines met

him. He had talked to us about some springs and mattresses. He was talking about buying a black steel spring and loose mattresses. We did not carry the kind he bought from Mr. McCoy in stock. I did not hear the contract made between him and Mr. McCoy. Mr. Haines first talked about a black steel spring hair mattress, as well as I remember, and then Mr. McCoy came down and they made a different deal together. I was not present when he ordered them from Mr. McCoy.

"Q. Where did McCoy take the order, from your store? A. I think so. We were to have five per cent on the furniture ordered. He ordered quite a bill of stuff aside from the mattresses at that time, dressers and tables and such things as that. They were shipped in a carload by themselves. Mr. Haines paid the freight when he paid the bill for the goods. I paid the agent and Mr. Haines paid me. I received five per cent commission on these goods. That was the amount under the contract we were to receive."

J. W. McCoy testified as follows:

"I am working for the Furniture Manufacturers' Association of St. Louis. I sold the mattresses in litigation. I made the contract with Mr. Haines at the Neece store. They told me to go and sell him the goods for the hotel and they would get a commission and so I sold Mr. Haines a carload of goods for the hotel, in their store. I did not know at the time what commission they had agreed on, I understood afterwards it was five per cent. I don't remember who told me that. I don't know exactly what was said, only at the time I remember the remark that was said, Mr. Neece said, 'Go ahead and sell him the stuff and they would get a commission, and Mr. Haines made a remark joking and said, 'I can beat Newt. out of the commission,' in a joking way. I sold him a combination moss and hair box mattress. There was no warranty or guarantee made on the sale to Mr. Haines.

On cross-examination, witness stated:

"The car was shipped to Neece Brothers, it had to

be.  I could have shipped it to Mr. Haines, but the factories always protect the dealer.  In shipping the two cars separate they would have to look to Mr. Haines' rating, because we had been shipping to Mr. Neece and they would have to look up the rating of Mr. Haines. My understanding was five per cent was given for the purpose of shipping through them.  They would not ship to a man that was not a dealer without looking him up.  They realized the responsibility of Mr. Neece and shipped to them."

Witness also stated that he expected Neece Brothers to stand good for the sale made to Haines under the terms of the contract at five per cent.

The verdict was for the defendants.  A timely motion for new trial was filed and overruled, whereupon plaintiff appealed.

Plaintiff's instruction No. 1, reads as follows:

"1.  The court instructs the jury that if you believe from the evidence in this case that the defendants sold to the plaintiff the combination mattresses and springs in evidence, and that at the time of such sale they represented that they were of a first-class quality and make and were suitable for use in a first-class hotel, and, if you further believe from the evidence, that such combination mattresses and springs were not of the quality and kind contracted to be delivered, but were of an inferior kind and quality and not suitable for use in a first-class hotel, and if you further believe from the evidence that such combination mattresses and springs were of less value owing to such inferior kind and quality, if any, then the contract price agreed to be paid therefor at the time of such sale, then the plaintiff would be entitled to recover in this action such difference in value, and your verdict should be for him."

The court gave the following instructions for the defendants:

"1.  The court instructs the jury, that if they believe from the evidence that defendants sold the mattresses in

controversy as agents for J. C. Costuba or Jacob Keiser, and not as their own property and disclosed their agency and the name of the vendor prior to and in the making of such sale, then the plaintiff cannot recover.

"2. The court instructs you that you cannot find for plaintiff unless you believe from a preponderance of the evidence, that the defendants made an express contract to warrant the condition of the mattresses sold to the plaintiff. No recovery in this case is sought on an implied contract, and even though you may believe from the evidence that the mattresses were unfit for the purposes for which they were ordered, this will not authorize you to find a verdict for the plaintiff unless you further find from the evidence that the defendants agreed with plaintiff, that such mattresses were to be fit for such purpose, or unless they authorized some one in their name to make such contract for them.

"3. The court instructs you that while one selling personal property in his possession is presumed in law to warrant the fitness thereof for the purpose for which the same is purchased, yet this possession must be that of the owner or one who sells the property as his own, if then, that the jury shall believe from the evidence that the defendants, when the sale of the mattresses was made to the plaintiff, sold the same as agents for Jacob Keiser, and that the plaintiff had full knowledge that they acted as such agents and not as principals, then your verdict should be for the defendants."

The giving of each of these instructions is assigned as error.

1. Defendants' theory of the case is, that there were three parties to the transaction, plaintiff, the purchaser, defendants, as intermediaries between plaintiff and Costuba, the seller, through the agency of McCoy and Keiser. That defendants brought plaintiff and Mc-Coy, representing the seller, together, and agreed, for a money consideration to be paid by plaintiff when the

goods arrived, to become primarily liable to the seller for the purchase price of the goods, to permit them to be shipped or consigned to them, and to receive them on their arrival and deliver them to plaintiff. On this theory of the case, supported by defendants' evidence, they were in a sense, the agents of both the buyer and the seller. Instruction No. 1 is in harmony with this theory of the defense and, though objectionable as stating an abstract proposition of law, we do not think the jury could have been misled by it, and for this reason does not call for a reversal of the judgment. Plaintiff further contends that the instruction went outside the pleadings, that it is nowhere stated in the answer nor shown by the evidence, that the defendants were the agents of Costuba. The answer alleged that the sole connection defendants had with the purchaser of the goods was "in the capacity of agents," but it does not allege for whom they were agents. The defendants' evidence tends to show that the contract or sale was made by and between plaintiff and McCoy; that McCoy was the traveling salesman for the Furniture Manufacturers' Association of St. Louis, and after taking the order sent it to Keiser to be filled; that Keiser did not have the goods on hand and could not manufacture them on account of a labor strike in his establishment, and turned the order over to Costuba; that Costuba accepted the order and furnished the goods. Under this state of the evidence, though Costuba may not have been informed of the fact that plaintiff was the real purchaser of the goods, yet, if, as defendants contend, they agreed to become primarily liable for the purchase price of the goods and that they might be shipped in their name, and agreed to receive and deliver them to plaintiff, they acted for both parties and were the agents of both the seller and the buyer.

2. Plaintiff contends that the suit is for breach of an implied warranty of goods, and that defendants' second instruction, which told the jury that before they

could find for the plaintiff, they should find that the defendants expressly warranted the quality of the mattresses, is erroneous. A warranty "is express where the seller makes some positive representation or affirmation, with respect to the article to be sold, pending the treaty of sale, upon which it is intended that the buyer shall rely in making his purchase." [Biddle, on Warranties in the Sale of Chattels, sec. 2.] The same author, at section 3, says: "A warranty is implied where, from the circumstances surrounding the parties at the time of the sale, or from the nature of the thing sold, the law assumes it to be just that the buyer should be protected, in addition to the contract of sale, by a further implied contract or guarantee on the part of the vendor, and so raises by implication a warranty on the seller's part." This author, at section 35, says: "It is not necessary, in order to constitute a warranty, that the seller should use the word 'warrant,' nor is any special form of words necessary; but any affirmation or assurance of a fact, during the treaty of sale on the part of the seller, upon which the buyer is intended to, and actually does, rely in making his purchase, is sufficient to constitute a warranty."

In White v. Stelloh, 74 Wis. 435, an instruction containing the following language was approved, to-wit: "Any assertion or averment by the seller to the purchaser during the negotiations to effect a sale, respecting the quality of the article or the efficiency of the property sold, will be regarded as a warranty, if relied upon by the purchaser in making the purchase."

In Carter v. Black, 46 Mo. l. c. 385, WAGNER, J., after quoting from Parsons on Contracts and Hilliard on Sales, on the subject of warranty and what representations are necessary to constitute a warranty, said: "It is sufficient if there be a representation of the state of the thing sold, or a direct, positive, unequivocal, and express affirmation of its quality and condition, being part of the consideration of the sale, and showing an

intention to warrant or make good the quality of the thing sold, and so understood and relied upon, instead of a mere recommendation or expression of an opinion, leaving the buyer to understand that he must still examine and judge for himself; more especially if the subject is within the particular knowledge of the vendor; and the question is for the jury, under the advice of the court." [See also Danforth & Co. v. Crookshanks, 68 Mo. App. l. c. 316, and Long Bros. v. The J. K. Armsby Co., 43 Mo. App. 253.]

The petition alleges that defendants agreed that the combination mattresses "should and were to be of first-class style, make and pattern and suitable for a first-class hotel business and were to be of a first-class grade and condition, and the plaintiff thereupon agreed to pay a first-class price," etc. The petition not only alleges that the mattresses were to be first-class and suitable for a first-class hotel, but further on it is stated that plaintiff was unfamiliar with such articles and did not know the grade of the goods. These statements in the petition show that defendants positively agreed that the mattresses were to be first-class and suitable for a first-class hotel, and that the plaintiff relied upon this undertaking in making the purchase. The petition, therefore, under the foregoing authorities, clearly counted on the breach of an express warranty of the grade and quality of the mattresses. The instruction is faulty in that it fails to define what is meant by an express warranty, but we think this omission is cured by instruction No. 1, given for plaintiff, which based plaintiff's right to recover on the fact that the defendants represented the mattresses to be of first-class quality and make, and suitable for use in a first-class hotel. Read together, the two instructions fairly submitted to the jury the issue, as to whether or not the mattresses were sold on an express warranty.

3. The third instruction given for defendant is outside the issues made by the pleadings and is unsup-

ported by any evidence in the case and is not the counterpart of any instruction given for the plaintiff. As we have seen, the petition counted on an express warranty of the quality, etc., of the mattresses, and plaintiff's evidence tended to prove that they were sold on an express warranty. The instruction is based on the theory of an implied warranty of which there is neither allegation nor evidence. But we can see nothing in the instruction that could have led the jury astray from the real issue in the case, and we think the error in giving it was nonprejudicial and harmless.

. . No reversible error appearing in the record, the judgment is affirmed. All concur.