## OAK LAWN SUGAR COMPANY, Respondent, v. SPARKS BROS. MULE COMPANY, Appellant.

**Kansas City Court of Appeals, December 4, 1911.**

1. **SALES: Warranty: Inspection: Selection.** Even though a vendee inspects personal property and selects it as being what he desires to buy, yet he may take and rely on an express warranty that it is what he desires. But the evidence must show that he relied upon the warranty.

2. ———: ———: ———: **Obvious Defect: Reliance.** Where the defect is so obvious that it is manifest the vendee could not be mistaken in it, as, by way of illustration, if a black horse is warranted to be a white horse, the element of reliance on the warranty would be lacking and none would be established.

3. ———: ———: ———: **Substitution: Non-Performance.** If a vendee selects and purchases a lot of mules, warranted to be of a certain height, and the vender agrees to put them on board of cars for shipment but substitutes others not of that height, there is non-performance of contract but not a breach of warranty.

4. ———: ———: ———: **Measure of Damages.** Where a vendee selected, purchased and paid for a lot of mules which the vendor warranted to be of a certain height, and it was afterwards ascertained that they were not of that height, the meas-

ure of damages is the difference in the market value at place of purchase of the mules delivered and the price paid to the vendor.

5. ———: ———: ———: **Instructions: Reliance.** An instruction that if a vendee inspects and selects mules which he desires to purchase and relies upon his own judgment as to their height and not upon the statement or representations of the vendor, then there is no warranty, is improperly refused.

6. ———: ———: ———: ———: **Defendant's Instructions Converse of Plaintiff's.** It is true as a general proposition that though the plaintiff's case is properly submitted in instructions, yet that does not disentitle the defendant to instructions plainly stating the converse.

7. ———: **Evidence: Letters Between Third Parties.** In an action on a warranty, where a vendor shipped a lot of mules to the vendee, which had been selected and purchased by the latter, and an issue was made whether the same mules were delivered at destination, it was *held* to be error to admit letters which passed between the railroad officials stating that the mules were not exchanged in transit.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

Reversed and remanded.

*Sehree, Conrad & Wendorff* for appellant.

(1) The court erred in refusing appellant's demurrer to the evidence and the instruction in that nature requested at the close of all the evidence, for the reason that there was a total failure of proof upon the issue of a warranty and a breach thereof. There was no breach of warranty. Kuhler v. Tobin, 61 Mo. App. 576; Toney v. Goodley, 57 Mo. App. 235; York v. Farmers Bank, 105 Mo. App. 137; 35 Cyc., pp. 367, 368 and 369; Cement Co. v. Stewart, 103 Mo. App. 182; Chanter v. Hopkins, 4 Mees. & W. 399; Ingwerson v. Railroad, 205 Mo. 335; Heusler v. Stix, 113 Mo. App. 175; 35 Cyc. pp. 454 and 455; Scharff v.

Meyer, 133 Mo. 445. There was no warranty proven, plaintiff purchased upon the judgment of E. V. Weems. Moore v. Koger, 113 Mo. App. 423; Mechem on Sales, secs. 1234, 1242, 1272; 35 Cyc. 376; Doyle v. Parrish, 110 Mo. App. 470; Haines v. Neece, 116 Mo. App. 499; Anthony v. Potts, 63 Mo. App. 517; Mattock v. Meyers, 64 Mo. 531; Richardson v. Coffman, 87 Ia. 21, 54 N. W. 356; Bank v. Anderson, 85 Mo. 351; Melliken v. Com. Co., 202 Mo. 655; Lindsay v. Davis, 30 Mo. 406. (2) The court erred in refusing instruction No. 3 asked by defendant. Haines v. Neece, 116 Mo. App. 510; Doyle v. Parrish, 110 Mo. App. 470, 473; Wood v. Thompson, 114 Mo. App. 38. (3) The court committed error in admitting in evidence over defendant's objections the letters of agents of the Kansas City Southern Railroad Company to the effect that the mules had not been mixed and exchanged for others at certain stations en route. 16 Cyc. pp. 1202, 1203, 1204; Johnson v. Burke, 103 Mo. App. 231; Criddle v. Criddle, 2 Mo. 522; Bloom Sons Co. v. Haas, 130 Mo. App. 122; Hoskins v. Mo. Pac., 19 Mo. App. 315; Ins. Co. v. Guardiola, 129 U. S. 642, 32 L. Ed. 802.

*I. J. Ringolsky* for respondent.

ELLISON, J.—Plaintiff's petition states a case for breach of warranty in the sale of forty-seven head of mules. The judgment in the trial court was for the plaintiff.

Plaintiff is a corporation owning a sugar plantation in the State of Louisiana, and defendant is a corporation engaged in the business of buying and selling mules. On January 12, 1907, E. V. Weems, who was president of the plaintiff company, came to Kansas City and he and one of defendant's officers selected the forty-seven head from a large number which defendant had in pens upon its premises. The petition alleges that twenty-three of the forty-seven were warranted

to be sixteen hands high; that twenty-two were warranted to be from 15¾ to sixteen hands high; and two to be 15½ hands high. It was plaintiff's purpose to ship the mules to Louisiana by railway and it is alleged in the petition that defendant agreed to load them on the cars.

Great space is taken in the record concerning the weight of the mules and on the subject of what is considered "a sugar" mule and "a cotton" mule. But we put that aside for the reason that the petition simply states a warranty of the height of the animals.

Defendant insists with much force that, in point of fact, there was no warranty made by defendant. There is much testimony, even that of Weems himself, which tends to prove there was no warranty. He admits that he helped to separate from the others the mules he bought, that he picked out the ones he wanted and that he inspected them, taking several hours in doing this. In addition to this, he had defendant put a hair brand on the jaw of each. After they were separated he testified that "they looked to me just exactly what I came there to buy, and they were mules from fifteen three, to sixteen hands, mules of good shape, of good quality. I did not see any fault with them. It appeared to me that they just suited me." But the mules in dispute were not measured and it cannot be said, as a matter of law, that because a vendee sees and inspects personal property he may not also exact a warranty. Of course, where the matter alleged to have been warranted, is so clear and obvious that there could be no mistake on the part of the buyer, it then becomes manifest that he did not rely upon the warranty and nine will be held to exist. Thus, if it should be claimed that a vendor warranted a white horse, then present, to be a black horse, it would be apparent that no reliance could have been placed on such statement. But a vendee may realize his liability to mistake in judgment, or otherwise, and demand a

warranty as a cautionary measure. In this case it may be that Weems would have taken the precaution to put the standard to each mule if he had not had the warranty as to height. He testified, pointedly, that he had defendant's express warranty; and there was much other evidence tending directly, and by inference, to support what he said. So, therefore, we think that the question was properly for the jury and that the court did not err in refusing the demurrer so far as this branch of the defense is concerned. [Woods v. Thompson, 114 Mo. App. 38; Harrington v. Smith, 138 Mass. 92; Gould v. Stein, 149 Mass. 570; 2 Mechem on Sales, sec. 1275.]

It is next insisted that if there was a warranty, there was no evidence of a breach. The point to this contention is this: That the mules received at the destination in Louisiana were not the mules that were warranted. This could be true in two ways, first, defendant may not have shipped the mules sold and warranted; or, though shipped, they may have become exchanged or mixed with other mules of a different class while in transit, whereby none, or only a part, arrived at destination. This question arises out of the character of the evidence in plaintiff's behalf. Weems, who is the only person who saw and selected the mules in Kansas City, and who also saw the mules which reached Louisiana, testified positively that, as we have already stated, he helped to select the mules in Kansas City and that they exactly filled the description, including height, of the kind he wanted. Yet when he saw the mules in Louisiana, he was shocked at their appearance and stated that they were, with few exceptions, much smaller and of a different class and that he "did not believe" then, and did not believe at the trial, that they were the same mules.

If they were not the same mules, by reason of loss while in transit, of course the comparison made by witnesses was on a false basis and the case was without

evidence that the mules sold were not as warranted. And the same result would follow if the mules sold were not taken to Louisiana by reason of defendant fraudulently substituting other mules in their stead. In such instances the action would not be for breach of warranty. The warranty alleged and relied upon was of a certain and specific lot of mules then present and then selected by the parties. It was not a warranty that mules of a certain description would be shipped and that they would reach Louisiana. The only evidence which can sustain plaintiff's case as to a breach of the warranty, must be something to show that those separated, selected and sold were not of the height warranted. It does not sustain the case to show that some other mules were not of that height.

But there was other evidence, which tended to show that the mules bought in Kansas City were the ones which arrived in Louisiana, and we are of the opinion that the corporate plaintiff ought not to be concluded, as a matter of law, by the fact that one of its officers who transacted the business, did not believe the property was the same. There was other evidence tending to show that he was mistaken and that they were the same, We therefore rule that a question whether there was a breach of the warranty was made for the jury.

The next matter presented concerns the instructions. Number 1, for plaintiff, properly submitted the case on the warranty. The hypothesis was submitted whether a warranty was made and whether it was relied upon by Weems.

The second instruction was on the measure of damages. We take it that the damages should be ascertained by deducting the market value at Kansas City of the mules plaintiff got, from the price paid for those he was to get. And this we understand to be the meaning of the instruction. No vexed question as to

expected profits, or as to one being entitled to his bargain, etc., appears in the case.

But while plaintiff was thus allowed all proper hypotheses in its behalf, defendant was near totally cut out of the converse. For instance, it asked the simple declaration that if the mules were of the height plaintiff intended to buy and which defendant represented to plaintiff it was buying, there could be no recovery. That was erroneously refused.

Again defendant asked that although defendant represented the mules to be of the heights which plaintiff desired, and that plaintiff's agent had confidence in the statement, yet if the agent examined the mules himself and bought on his own judgment and not on defendant's representations, then there was no warranty. That also was erroneously refused. If the vendee examines the article for himself and buys on his own judgment and does not rely on the representations of the vendor, there is no warranty. [Haines v. Neece, 116 Mo. App. 499, 510; Woods v. Thompson, 114 Mo. App. 38; Doyle v. Parish, 110 Mo. App. 470; and authorities above cited.]

Again, defendant offered the hypothesis that if the mules sold, and selected by plaintiff's agent, were of the height (setting out the different heights claimed by plaintiff) he desired to purchase and thought he was purchasing, then no cause of action existed. This was likewise erroneously refused.

These three refused instructions were short and plainly to the point of defendant's defense. It is not so stated by plaintiff, but the effect of its contention is that because its case was properly submitted, defendant was not entitled to anything in its behalf. That is not the practice. Defendant is entitled to have submitted the converse of the plaintiff's case, when, as in this case, the full hypothesis of the defense is not clearly included in plaintiff's instructions.

But one instruction was given for defendant, and the first half of that was about as asked by defendant in its refused instruction No. 4; but it then added the hypothesis of defendant shipping the mules on the railway, or delivering them for shipment to the agent of the railway company. The addition as to shipment was an unnecessary burden which defendant need not have included in the instruction. The action is on the warranty and it is so submitted by plaintiff. There may have been included in the agreement of sale that defendant was to ship the mules and his failure to do so would be a non-performance, but that certainly was not a breach of warranty that the mules were of a certain height. [Chanter v. Hopkins, 4 Mees. & W. 399.] In that case it was said that: "A good deal of confusion has arisen in many of the cases upon this subject, from the unfortunate use made of the word 'warranty.' Two things have been confounded together. A warranty is an express or implied statement of something which the party undertakes shall be a part of a contract, and though part of the contract, yet collateral to the express object of it. But in many of the cases, some of which have been referred to, the circumstance of a party selling a particular thing by its proper description has been called a 'warranty,' and a breach of such contract, a 'breach of warranty'; but it would be better to distinguish such cases as a non-compliance with a contract which a party has engaged to fulfill—as, if a man offers to buy *peas* of another, and he sends him *beans*, he does not perform his contract; but that is not a warranty; there is no *warranty* that he *should* sell him peas, the contract is to sell peas, and if he sells him anything else in their stead, it is a non-performance of it."

Defendant next complains, and we think justly, that there was error in the admission of letters as evidence against defendant. These letters were from the agents of the line of railroad over which the stock was

shipped, to other officials of the road, and their introduction came about in this way:   The stock having been selected by plaintiff's agent, Weems, when plaintiff began to complain, some time after its arrival, of its not being the same that was bought, or that it did not fill the warranty as to height, the inquiry was naturally suggested how it could be; and the thought occurred that possibly there had been a mixing or a reloading into different cars during transit and thereby other mules gotten into plaintiff's cars.   So defendant asked an investigation and the correspondence between agents and other officials of the railroad followed, in which it was stated that nothing of that kind had occurred.   These letters defendant sent to plaintiff and they were kept and offered in evidence as stated. Plaintiff now suggests that, though not competent to prove the mules were not exchanged, they were competent as tending to prove that there was a warranty. That defendant's interest in the matter showed that it considered it must account for the mules received being below a certain height, etc.   But the mere fact of making inquiry of railway officials would have answered that purpose without putting in unsworn correspondence between third parties.   If plaintiff desired such evidence, it should have had witnesses in court or by deposition.   It was unfair and prejudicial to defendant as offered.   [Bloom's Son Co. v. Haas, 130 Mo. App. 122; Insurance Co. v. Guardiola, 129 U. S. 642.]

The judgment is reversed and the cause remanded. All concur.