## WILLIAM CASSIN v. JAMES W. LUSK et al., Receivers of ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellants.

### Division One, April 7, 1919.

1. **NEGLIGENCE: Defective Tool: Knowledge of Company.** Where the evidence is sufficient to afford a basis for a knowledge on the part of the railroad foreman of the defective condition of the tool with which the workmen was required to perform his work, the jury are entitled to consider it in determining the cause of the workman's injuries.

2. **———: Interstate Commerce: Filling Water-Cooler of Passenger Train.** Evidence that plaintiff's duties consisted in filling a water-cooler of a passenger coach for use in interstate commerce, which arrived .the evening before after a similar use and was left overnight to be prepared for an interstate journey the following morning, said coach being run daily between Lawton, Oklahoma, and Quanah, Texas, and was merely stopped overnight at Lawton to be cleaned and put in order for a continuance of an interstate journey next day, tends to show that the coach was permanently appropriated for interstate commerce, and tends to prove that he was engaged in interstate commerce at the time he was filling the water-cooler and the hose broke, which caused his injury. And such being the evidence the trial court did not err in overruling a demurrer to the evidence in the case brought under the Federal Employers' Liability Act.

3. ———: ———: **Submitted in Separate Instruction.** If the instruction given to cover the whole case submits the issue of whether or not defendant was engaged in interstate commerce at the time plaintiff was injured, it is not necessary that said issue be also submitted in the instruction intended solely to prescribe the apportionment of damages in case the jury find that both parties were negligent. Especially should this be the rule if the instruction covering the whole case in terms refers the jury to all other instructions given.

4. ———: **Federal Employers' Liability Act: Reduction of Damages: Instruction: Harmless Error.** In an action brought under the Federal Employers' Liability Act, an instruction defining the duty of the jury in case the evidence shows negligence on the part of the plaintiff as well as the defendant must contain terms or language requiring the jury to diminish the whole amount of damages allowable by such a sum as represents the proportional negligence attributable to the plaintiff; and an instruction which tells the jury that, in such case, they "are only warranted in reducing the amount of damages to be awarded to plaintiff in the proportion that his negligence bears to the combined negligence of himself and the defendants" is, by the use of the words "only warranted," incorrect. But it is not in this case reversible error, because the record discloses no facts or circumstances which would have warranted the jury in finding that plaintiff was guilty of evidence directly contributing to his injury.

5. ———: ———: **Contributory Negligence.** It is not the duty of the servant to keep the tool furnished him by his master in a reasonably safe condition. The law imposes that duty on the employer.

6. ———: ———: ———: **Confined to Pleas.** Defendant cannot rely on any theory of contributory negligence beyond the averments contained in its answer, unless negligence is shown as a matter of law by testimony given for plaintiff in submitting his case.

7. ———: **Evidence: Defective Tool: Details of Bad Condition.** If the jury are required by plaintiff's instruction to find any bad condition in the defective hose used by him in filling the coach water-coolers not warranted by the evidence, he simply shoulders an additional burden, which does not harm defendant.

8. ———: ———: **Custom: Prudent Method.** A railroad company is not compelled to adopt any specific method for the purpose of connecting two pieces of hose used in filling water-coolers on its passenger coaches other than one that would result in making the hose reasonably safe, but evidence for plaintiff that the common custom was to use clamps cannot be said to be without evidenciary force, since the very existence of the general custom consists with the idea that prudent men have always followed.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,*
Judge.

AFFIRMED.

*W. F. Evans, Ben M. Neale,* and *Mann, Todd & Mann* for appellants.

(1) The court erred in refusing to give the instruction requested by defendants in the nature of a demurrer to the evidence. (a) Because there was no evidence that defendants had knowledge of any defect in the hose; nor was there any evidence that a defect had existed a sufficient time that constructive knowledge could be implied to defendants, and therefore the evidence failed to show any of the facts necessary to constitute actionable negligence, and for that reason the demurrer should have been given. Crane v. Railroad, 87 Mo. 595; Wojtylak v. Coal Co., 188 Mo. 281; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Rowden v. Daniel, 151 Mo. App. 15; Wilks v. Railroad, 159 Mo. App. 722. The law presumes that the fastening of the hose with the "copper" wire noticed by plaintiff three or four days before he was injured and again the night before he was injured, was applied by some servant of defendants and that it was properly and securely applied. Not only was there an absence of any evidence to overcome this presumption, but plaintiff testified that each time he noticed the "copper" wire, apparently it was all right. Glasscock v. Dry Goods Co., 106 Mo. App. 657; Hartwell v. Parks, 240 Mo. 537; King v. Ringling, 145 Mo. App. 294; Franklin v. Railroad, 97 Mo. App. 482; McCallister v. Ross, 155 Mo. l. c. 94. (b) Because although the petition alleges that plaintiff was engaged in interstate commerce at the time he was injured, the evidence shows he was not so engaged. Minneapolis and St. L. R. Co. v. Winters, 242 U. S. 353, 61 L. Ed. 358. (2) The court erred in giving Instruction Number Five at the request

of plaintiff. (a) Because said instruction is erroneous in that it assumes without leaving it to the determination of the jury that plaintiff was engaged in interstate commerce. The instruction is vitally defective because even if it should be held that the evidence, if true, would justify a holding that plaintiff was engaged in interstate commerce when injured, the instruction usurps the province of the jury and in effect declares that plaintiff's evidence is true and must be believed. McReynolds v. Railroad, 115 Mo. App. 680; Johnson v. Grayson, 230 Mo. 394; Hunter v. Wethington, 205 Mo. 293; Julian v. K. C. Granite & M. Co., 187 S. W. 585; Dalton v. Poplar Bluff, 173 Mo. 46; Gannon v. Gas Co., 145 Mo. 515; Seehorn v. Bank, 148 Mo. 265; Gooden v. Modern Woodmen, 194 Mo. App. 668; Rasch v. Bankers Life Co., 201 S. W. 924. (b) Because said instruction does not require or command the jury in the event they find plaintiff to have been guilty of negligence directly contributing to his injury to deduct from the total amount of damages sustained by plaintiff such sum as equals the proportion which they may find the contributory negligence of plaintiff bears to the whole causal negligence in the case; it merely tells the jury that they are only warranted in reducing the damages. Crecelius v. C., M. & St. P. Ry., 205 S. W. 186. (3) The court erred in giving instruction Number 2 at request of plaintiff because said instruction is broader than the evidence and includes a specification of negligence not authorized by the evidence, to-wit: There was no evidence whatever that the "fiber and fabric of the hose was defective and rotten," and therefore the inclusion of this is the instruction was erroneous. Degonia v. Railroad, 224 Mo. 589; Black v. Railroad, 217 Mo. 685; Schumaker v. Breweries Co., 247 Mo. 162; State ex rel. v. Ellison, 195 S. W. 724.

*F. P. Sizer* for respondent.

(1) The evidence is overwhelming in all the essential elements of actionable negligence, because three wit-

nesses testified that defendants' foreman had knowledge of the defective condition of the hose. In fact, it is in evidence by all the witnesses that "old" defective end of the hose was actually furnished and installed by the defendants' foreman; and that the fifteen-foot end of the hose which came off of the nipple was "cut out of the old hose" and spliced to the new hose; and the two witnesses besides plaintiff were employees of the defendants. Their testimony is conclusive that the defendants did have knowledge of the defective condition of the hose. (a) The master must not only furnish reasonably safe tools for his servants, but must inspect those tools from time to time, to see that they are kept in a reasonable safe condition. Ogan v. Railroad, 142 Mo. App. 252; Guthridge v. Mo. Pac. Ry., 105 Mo. 528; Reader v. Lime Co., 129 Mo App. 107; Bible v. Frisco Railroad, 169 Mo. App. 519. (b) There is a difference in the law as to the duty of the servant, with reference to inspection, and that of the master. The duty of the servant in this respect is of a negative and passive character, as compared with the positive and continuing duty of the master. Bible v. Frisco Railroad, 169 Mo. App. 531; Gibson v. Bridge Co., 112 Mo. App. 594; Rowden v. Mining Co., 136 Mo. 385; Coin v. Loonge Co., 222 Mo. 505. (2) Where a servant is working for an interstate road like the Frisco, and an employee is engaged in preparing cars or engines or instrumentalities to go out on interstate runs, or directly connected with such preparation, as was the plaintiff, then the servant is also held to be engaged in interstate commerce. North Carolina Railroad v. Zachary, 232 U. S. 248, 58 L. Ed. 591; Hawkins v. Frisco, 189 Mo. App. 201; Frisco v. Seale, 229 U. S. 156, 57 L. Ed. 1129; Pedersen v. Railroad, 229 U. S. 146, 57 L. Ed. 1125; Law v. Ill. Cen., 126 C. C. A. 27; Montgomery v. Ry., 64 Ore. 597; Horton v. Railroad, 72 Wash. 503; Darr v. B. & O. Railroad, 197 Fed. 665; Ill. Railroad v. Nelson, 203 Fed. 956; Neil v. Railroad, 125 Pac. 331; New York Cen. v. Carr, 238 U. S. 260, 59 L. Ed. 1298; Freeman

v. Powell, 144 S. W. 1033; Seaboard Air Line v. Padgett, 236 U. S. 668, 59 L. Ed. 777; Cross v. Railroad, 191 Mo. App. 202; Railroad v. Peters, 69 So. 611. (3) Complaint is made that Instruction 5 assumes that plaintiff was engaged in interstate commerce without leaving that question for the jury. In answer to this contention, we call the court's attention to the fact that in Instruction 1 this question was submitted to the jury along with other essential facts. It is fundamental that the instructions should be considered as a whole, and Instruction 1 for plaintiff should be considered with Instruction 5 and other instructions given on behalf of plaintiff. Hoover v. Coal Co., 160 Mo. App. 330; Michael v. Railroad, 161 Mo. App. 64; Wilson v. Railroad, 169 Mo App. 418; Jackson v. W. U. T. E., 174 Mo. App. 82; Pendergrass v. Railroad, 179 Mo. App. 536. (4) The court did not err in permitting plaintiff and Frazier to testify to the fact that it had been customary at the Frisco and at other places to splice hose with clamp and screw fastenings. Evidence of custom has probative force in proving negligence. Gordon v. Railroad, 222 Mo. 536; Brunks v. Tel. Co., 115 Mo. App. 36; O'Melia v. Railroad, 115 Mo. 205; White v. Railroad, 84 Mo. App. 411; Spencer v. Briener, 126 Mo. App. 102. While the master does not have to adopt the safest way to do his work, yet he must adopt a reasonably safe way, and the evidence of custom becomes material as to what is a reasonably safe method or way of doing the work. Jarrel v. Coal Co., 154 Mo. App. 558; Mack v. Railroad, 123 Mo. App. 531; Spencer v. Briener, 126 Mo. App. 102; Schroeder v. Railroad, 108 Mo. 328; Halliburton v. Railroad, 58 Mo. App. 27.

BOND, J.—Action to recover damages for personal injuries. Plaintiff, William Cassin, a man forty-five years of age, was employed by the receivers of the Frisco Railroad Company, as a coach cleaner. On January 23, 1915, at Lawton, Oklahoma, while he

was filling one of the water-coolers of a passenger coach by means of a hose which he had carried to the top of the coach, the hose parted and he was thrown to the ground and a freight train passing on a parallel track ran over one of his feet, crushing it so that it had to be amputated.

The petition was in two courts, the first pleading the Federal Employers' Liability Act and the second based on common law negligence. On the trial the court at defendants' request instructed the jury that no recovery could be had on the latter count. The case originated in Lawrence County, but was sent to Dade County on a change of venue.

Negligence was charged for failure to exercise ordinary care to furnish plaintiff with a reasonably safe hose with which to work; and failure to inspect and see that the hose with which plaintiff was supposed to work was in such repair as to make it a safe appliance.

The answer was a general denial, coupled with the defense of contributory negligence and assumption of risk.

The plaintiff replied, denying negligence on his part, or that his knowledge of the risk in using said hose was equal to or greater than the knowledge of the defendants.

The evidence tended to show that it was plaintiff's usual duty to fill water-coolers in certain passenger coaches which were stored overnight at Lawton, preparatory to a day trip to and return from Quanah, Texas. A water-cooler is located at each end of such coaches, and is filled by a hose which is carried to the top of the coach and inserted in the cooler. The hose used in this instance was sixty-five feet in length and consisted of new hose, fifty feet long, which was spliced to an old piece fifteen feet long by means of an eight-inch iron pipe. When this splicing was originally made, the two pieces of hose fitted the pipe closely, but in time, owing to hard usage and the fact that the hose was dragged about, it became loose and fell apart. The condition of

the hose was reported to the foreman, and he in turn had a car inspector repair it by wrapping a piece of wire around the two pieces where they came together over the piece of iron pipe and twisting the two ends of wire together. It appears that this splicing was not very successful and often allowed the hose to break apart. It was frequently reported to the foreman, and the car inspector continued to repair it with wire, as stated above. On one occasion when it was found that the hose had broken again, the car inspector gave his pliers to plaintiff and told him that he and Frazier (the man who turned on the hydrant when plaintiff reached the top of the coaches) could fix it themselves.

On the night of the accident plaintiff, as usual, went on top of the coach by means of a ladder, dragging the hose behind him. He filled one cooler and started toward the other end of the coach to fill the other, when the hose broke apart, causing him to lose his balance and fall to the ground, and as a result was run over by a moving freight train and injured.

The coach on which plaintiff was working was one of the coaches of a passenger train which was used every day in interstate commerce between Lawton, Oklahoma, and Quanah, Texas. The train left Lawton at seven o'clock in the morning, and returned from Quanah at four-fifty in the afternoon, when the coaches were run on a storage track and left to be cleaned for the next day's run.

After the accident plaintiff was taken to a hospital at Lawton, where his foot was amputated, and later was taken to a hospital at Springfield, Missouri, where it was found that a second amputation of the leg was necessary.

The jury returned a verdict for plaintiff and assessed his damages at the sum of twelve thousand dollars.

From a judgment of this amount defendants appealed.

I.   The evidence recited above afforded a suffi-
cient basis for a legitimate inference of knowledge on
the part of defendants' foreman of the defective con-
dition of the hose.   Hence the jury were entitled to con-
sider it in determining the cause of the injuries to
plaintiff.

The evidence tended to prove that plaintiff was
engaged in interstate commerce, for his duties per-
tained to the preparation of a coach for use the next
morning in interstate commerce, said coach
having arrived the evening before after a
similar use and was left overnight to be pre-
pared for a journey in interstate commerce the follow-
ing morning.   This evidence tended to show that the
coach in question was permanently appropriated for
interstate commerce and that it was merely stopped
overnight to be cleaned and put in order for a con-
tinuance of an interstate-commerce journey next day.
It, therefore, did not fall within the rule stated by the
Supreme Court of the United States in Minneapolis,
etc., Ry. v. Winters, 242 U. S. 353, where the facts did
not show that the engine being repaired by the plaintiff
when he was injured "was permanently engaged" in
interstate commerce.   On the contrary it was held to be
subject to local use.   Said the court:   "An engine as
such is not permanently devoted to any kind of traffic
and it does not appear that this engine was destined
especially to anything more definite than such business
as it might be needed for.   It was not interrupted in
an interstate haul to be repaired and go on.   It simply
had finished some interstate business and had not yet
begun upon any other.   Its next work, so far as appears,
might be interstate or confined to Iowa, as it should
happen."   [242 U. S. l. c. 356.]

In the present case the coach in question was ex-
clusively used in interstate business and was only
stopped for preparation for that use and hence it fell
within the doctrine announced by the United States
Supreme Court in N. Y. Cent. Railroad v. Carr, 238 U.

*Margin note: Interstate Commerce.*

S. 260; N. C., etc., Ry. v. Zachary, 232 U. S. 248; Pedersen v. Railroad, 229 U. S. 146, and other cases cited in respondent's brief. In the first of these cases the Supreme Court of the United States, speaking as to this point, said:

"The scope of the statute is so broad that it covers a vast field about which there can be no discussion. But owing to the fact that, during the same day, railroad employees often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides state from interstate business. The matter is not to be decided by considering the physical position of the employee at the moment of injury. If he is hurt in the course of his employment while *going to a car to perform* an interstate duty, or if he is injured while *preparing an engine for an interstate trip, he is entitled to the benefits of the Federal Act, although the accident occurred prior to the actual coupling of the engine to the interstate cars.*" (Italics ours.) [238 U. S. 262.]

Again, said the same court on this subject: "It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still in the future. It seems to us, however, that his acts in inspecting, oiling, firing and preparing his engine for the trip to Selma, were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant. See Pedersen v. Deleware etc. Ry., 229 U. S. 146, 151." [232 U. S. l. c. 260.]

The trial court did not, therefore, err in overruling respondent's demurrer to the evidence.

II.   The remaining assignments of error relate to the giving and refusing of instructions and the ad-

mission of testimony. Taking these in order: It is insisted for appellants that the court erred in giving Instruction No. 5, in that said instruction contained no formal submission of the issue of whether or not plaintiff was engaged in interstate commerce at the time he was injured. While that is so, still

Instruction.

it must be borne in mind that the instruction in question was not one which covered the entire case, but was one relating only to comparative negligence of the parties, and concluded, to-wit: "And even though you may believe from the evidence that plaintiff was guilty of negligence which directly contributed to his injuries, yet if you further find that the defendants were also guilty of negligence which directly contributed to plaintiff's injuries, as set forth in the other instructions herein, then you are only warranted in reducing the amount of damages to be awarded to plaintiff in proportion as his negligence bears to the combined negligence of himself and the defendants."

In other words, it is apparent that the portion of the instruction above quoted and complained of was intended solely to prescribe the duty of the jury to make a comparison in case they should find that both parties were guilty of negligence and reduce the damages recoverable by plaintiff according to the rule fixed by the Federal Employers' Liability Act.

However, the first instruction given for plaintiff did cover the entire case and did submit to the jury every phase of the evidence under the issues raised by the pleadings, and among other things, "that the plaintiff, as well as the defendants, at the time was engaged in interstate commerce between the different states," and "that the parting of said hose and the consequent injury to plaintiff was due to the negligence of defendants, their agents, servants or employees in whole or in part, in the particulars as set forth in the next succeeding instructions and the other instructions herein" as prerequisites to a verdict for the plaintiff on the first count of the petition. It is the established rule

in this State, that an instruction which purports to cover the entire case and direct a verdict, must contain within itself a submission of all the issues upon every phase of the evidence, and any failure on the part of the first instruction in that respect would have been reversible error. But such is not the rule applicable to instructions directed only to particular phases of the evidence or particular issues. Instructions of the latter kinds are correctible or supplementable by any other instructions given in the case, all of which must be considered together by the jury in arriving at their verdict. We do not think, therefore, that the omission to resubmit to the jury the issue as to whether or not the parties were engaged in interstate commerce was a reversible error in view of the complete submission of that issue in the first instruction for plaintiff, and especially in view of the fact that said instruction in terms, referred the jury to all other instructions which might be given in the case, thus telling them that they should be guided by the instructions as a, totality. We do not think in these circumstances and in view of the fact that the uncontradicted evidence disclosed a state of facts which proved that plaintiff was engaged in interstate commerce, that the jury could have been misled in their consideration of this case.

It is, however, contended that Instruction No. 5 was faulty in another respect. This complaint is, that the instruction in question, by the use of the terms "only warranted," failed to inform the jury that it was their bounden duty to exclude from the recovery, in case both parties were negligent, "a proportional part of the damages corresponding to the employee's contribution to the total negligence." [Seaboard Air Line v. Tilghman, 237 U. S. l. c. 501; Blankenbaker v. Railroad, 187 S. W. 842; Crecelius v. Railroad, 205 S. W. 185.] In the two last cases this court has followed the paramount authority of the Supreme Court of the United States in construing the Federal Employers' Liability Act, and

*Only Warranted.*

has held that an instruction defining the duty of the jury in cases where the evidence shows *negligence on the part of the plaintiff as well as of the defendant*, must contain terms or language requiring the jury to diminish the whole amount of damages allowable by such a sum as represents the proportional negligence attributable to the plaintiff. From that ruling this court will not recede so long as the Supreme Court of the United States adheres to its ruling on the subject. If the words "only warranted" in the instruction had been substituted (with the necessary changes of the context) by some such terms as "you will" or "you must" the instruction under review would have been technically flawless under the rule of both the Supreme Court of the United States and of this court, cited above. As it is phrased, however, the instruction on this point is incorrect. Hence the only question is whether or not is constituted reversible error under the testimony in this record bearing on the question of contributory negligence of the plaintiff. If the record discloses any facts or circumstances which would have warranted a finding by the jury that the plaintiff was guilty of negligence directly contributing to his own injuries, then this judgment would have to be reversed under the terms of the Federal statute applicable to the duty of the jury in cases of joint negligence. [Sec. 3, Act. April 22, 1908, 35 U. S. Stat. p. 65, chap. 149; U. S. Comp. Stat. 1918, sec. 8659.] Of course, if upon the conceded facts no inference of negligence on the part of plaintiff is legally deducible, then the instruction under review was harmless. The only pleas of contributory negligence contained in the answer of the defendants is in paragraph three, which in substance avers that the plaintiff contributed to his own injury "in that in using said hose he took no precautions whatever for his own safety, when by the exercise of ordinary care on his part he could not only have kept the hose in good condition, which it was his duty to do and which he failed to do, but that he also by the exercise of ordinary care on his

part could have prevented himself from falling, and by the exercise of ordinary care on his part could have prevented any injury to himself by reason of the use thereof, which he failed to do." This was all the answer contained in reference to a charge of contributory negligence on the part of plaintiff. The other part of the answer referred to assumption of risk, a doctrine not applicable to this case. [Fish v. Railroad, 172 S. W. 340.]

Clearly it was not the duty of the plaintiff to keep. the hose furnished him by the master in a reasonably safe condition. That duty the law imposed upon the employer. Nor have we been able to find any evidence tending to show any negligence on the part of the plaintiff which contributed to his falling from the top of the car while he was drawing up the hose in order to fill the coolers. Of course defendants cannot rely on any theory of contributory negligence beyond the averments contained in their answer, unless, which is not the case, negligence was shown as a matter of law by testimony given for plaintiff in submitting his case.

In these circumstances failure to embody in the instruction under review language required by the Federal Employers' Liability Act in cases only where both parties are negligent, was not harmful error in the absence of any substantial evidence showing that plaintiff was guilty of negligence directly contributing to his own injury in the manner stated in the answer of defendant.

Our conclusion is that we would not be warranted under the facts in this record in reversing this case on account of the erroneous phraseology of the instruction defining the duty of the jury in cases where joint negligence is shown.

III. Appellant complains of the language contained in Instruction No. 2 given for the plaintiff, because, in a clause therein, an issue was submitted to the jury whether or not the hose furnished to plaintiff "was old,

defective and rotten," the contention being that there is no evidence tending to support that theory. On that point a witness for plaintiff testified, to-wit:

**Evidence.**

"The foreman furnished Cassin and me with a long hose for watering coaches; it was about sixty-five feet long, I suppose—something like that—and at times it was longer. Sometimes it would get cut off, it would get worn out, and one thing and another, and sometimes they would let the cars run over it, using it across the tracks. This hose was made up of two pieces, the longest piece was about fifty feet, the shortest about twelve or fifteen feet, something like that. The short piece was the old hose. It was from a long hose, I suppose fifty feet long that had been worn and cut off— some full of holes until it got down that short. The old hose from which the short piece was taken might have been there two or three years, or four."

It is evident if the witness correctly described the hose, the instruction in question was not without support in the evidence. Besides it must be borne in mind that if the jury were required to find any bad condition of the hose not warranted by the testimony, plaintiff simply shouldered an additional burden which did not harm the defendants.

IV. It is insisted that the court erred in the admission of testimony in reference to the common custom of using clamps to connect the two pieces of hose. Defendants were not compelled to adopt any specific method for that purpose other than such an one as would make the use of the hose reasonably safe. However, the evidence in question cannot be said to have been without any evidentiary force, since the very existence of the general custom consists with the idea that prudent men may have followed it. On that subject this court, in Gordon v. Railroad, 222 Mo. l. c. 536, approved a decision of the Court of Appeals in the following language:

"In Brunke v. Telephone Co., 115 Mo. App. 36, it was held that 'evidence of a custom in doing a certain thing has probative force bearing upon negligence, since custom arises from its adoption by many prudent men, and the law recognizes the value of arriving at the nature or tendency of the given act by considering its effect upon the conduct of others as shown by a general custom;' citing O'Melia v. Railroad, 115 Mo. 205; White v. Railroad, 84 Mo. App. 411, and other Missouri cases."

There was no complaint that the verdict in this case was excessive. We have not been able to find any valid reason, under the facts in this record, why it should be disturbed. It will, therefore, be affirmed. It is so ordered. All concur; Blair, P. J., in paragraphs 1, 3 and 4 and the result.