T. H. WALTON, JR., RESPONDENT, v. A. B. C. FIREPROOF WAREHOUSE CO., APPELLANT.—124 S. W. (2d) 584.

Kansas City Court of Appeals.  January 30, 1939.

*James B. Nourse* and *William Paul Pinkerton* for appellant.

*Jenkins & Vance* for respondent.

KEMP, J.—This is a suit to recover the value of a shipment of household goods and effects, arising out of the failure of the two defendants, A. B. C. Fireproof Warehouse Company and Sunflower Lines, Inc., as alleged common carriers, to make delivery of the goods to the respondent (hereinafter referred to as plaintiff) as consignee thereof. The owner of the goods, who was the consignee of the shipment involved herein, was an employee of the Universal Credit Company located in Kansas City, Missouri. Immediately preceding the transactions herein referred to, he had been transferred to Joplin, Missouri, and had gone to Joplin and taken up his duties there in advance of arrangements being made for the shipment of his goods. J. A. Clark, Assistant Manager of the local office of the Universal Credit Company in Kansas City, made all arrangements for the shipment of plaintiff's goods. The said Clark contacted Mr. Thomas, an officer of the A. B. C. Fireproof Warehouse Company, and requested him to go out to plaintiff's apartment and examine the goods to be shipped and give him an estimate of the costs for packing and shipping said goods to Joplin, Missouri. After having the goods inspected, Mr. Thomas, in a conversation with Mr. Clark, estimated that the weight of the shipment would be approximately two thousand pounds and submitted two alternative (defendant says three) estimated costs of carriage, depending upon respective methods and conditions of shipment. Thereupon, Mr. Clark directed him to go out and get the goods and take them to the warehouse, and said that he would advise

the A. B. C. Fireproof Warehouse Company within a day or two as to when to ship the goods to Joplin. Within two or three days Mr. Clark was in Joplin and ascertained that an apartment had been procured by the plaintiff. He thereupon called the defendant, A. B. C. Fireproof Warehouse Company, by long-distance and talked to Mr. Newman and requested that they ship the goods out immediately so that they would arrive in Joplin the following morning. Mr. Newman asked him for details about the shipment and was instructed that Mr. Thomas would know all about it. Mr. Thomas, upon being advised of these instructions, called the defendant, Sunflower Lines, and requested them to pick up the shipment for their night haul to Joplin. Mr. Thomas testified that in quoting a $35 price to Mr. Clark, he specifically mentioned that would involve sending the shipment by railroad or by truck and that he specifically mentioned the Sunflower Lines in connection with the possible shipment by truck. Mr. Clark denies that there was any mention of the Sunflower Lines.

The Sunflower Lines route from Kansas City, Missouri, to Joplin, Missouri, goes into the State of Kansas. At Arma, Kansas, the Sunflower Lines truck in which the goods were being transported collided with a train and most of the goods involved here were destroyed. The bill of lading was made out by the A. B. C. Fireproof Warehouse Company and named that company as the shipper and showed a declared value of the goods at 10c per pound. Shortly after the loss plaintiff prepared an itemized statement of the goods lost and the respective values of each item thereof and, through the A. B. C. Fireproof Warehouse Company, made claim therefor against the Sunflower Lines, Inc. Within a reasonable time the Sunflower Lines, Inc., tendered to plaintiff its check in the amount of $78.79, which represented the declared value of the goods lost on the basis of 10c per pound. Plaintiff refused the check on the ground that he was entitled to the full reasonable value of the goods which he claimed to be $688.25. Plaintiff at the same time advised the defendant, A. B. C. Fireproof Warehouse Company, that he was looking to it for payment of this loss.

Upon the trial of the case, defendant Sunflower Lines showed its tender to plaintiff of $78.79 in payment for the loss on the basis of 10c per pound and, further, that upon plaintiff's refusal to accept same, it had paid that sum to the Clerk of the Circuit Court in discharge of its limited liability under the terms of the bill of lading. Thereupon, the trial court sustained defendant Sunflower Lines' demurrer to the evidence.

Plaintiff seeks recovery on the theory that defendant A. B. C. Fireproof Warehouse Company accepted the goods as a common carrier for transportation to Joplin and is liable for the full value of the goods lost in shipment. Defendant A. B. C. Fireproof Ware-

house Company defends on the ground that it received the goods as a warehouseman and as such acted merely as plaintiff's agent in selecting a carrier to transport the goods to Joplin, Missouri, and hence liable, if at all, only for its failure to exercise reasonable care in handling and caring for the goods while they were in its possession, and in selecting a carrier to transport said goods.

Instruction "A", given on behalf of plaintiff, is as follows:

"The court instructs the jury that if you find and believe from the evidence that the Walton goods were turned over by the plaintiff to the A. B. C. Fireproof Warehouse Company, and accepted by them for transportation to Joplin, Missouri, if so, then the A. B. C. Fireproof Warehouse Company became the insurer of said goods and guaranteed the safe delivery to the consignee, Walton, at Joplin, and if you find and believe from the evidence that the A. B. C. Fireproof Warehouse Company, failed to deliver said goods safely to the plaintiff at Joplin, then your verdict shall be for this plaintiff and against the defendant in such amount as is the fair and reasonable market value of the goods lost or destroyed."

Defendant first charges that said instruction is erroneous for the reason that it fails to submit to the jury the question of defendant's negligence in causing or permitting goods to be destroyed as a result of a collision with a train. The second amended petition on which said case was tried charges that "defendants in violation of their common-law duty as common carriers did so carelessly and negligently handle and transport the above described goods so as to carelessly and negligently cause or permit said goods to be damaged and totally destroyed as a result of a collision with a train, through no fault on the part of this plaintiff, rendering said goods valueless and a total loss."

It is defendant's contention that having so charged negligence of the defendant as the cause of the loss for which plaintiff seeks recovery, plaintiff is required to recover, if at all, upon that theory. This would seem to be the law in this State. In the case of *State ex rel. Atchison T. & S. F. Ry. Co. v. Trimble et al.*, 257 S. W. 104, the Supreme Court had under review a majority opinion of the Kansas City Court of Appeals in which Judge TRIMBLE wrote a dissenting opinion. That case involved a suit against the Railway Company for the loss of an automobile which plaintiff had delivered to a co-defendant, A. B. C. Fireproof Warehouse Company, at Kansas City, Missouri, to be forwarded from Kansas City, Missouri, to Los Angeles, California. The following allegations appear in the petition:

"That the said defendant A. B. C. Fireproof Warehouse Company, on or about said date, for hire accepted said personal property and undertook to deliver same to defendant Atchison, Topeka & Santa Fe Railway Company, at Kansas City, Mo., to be carried by said railway

company from Kansas City, Mo., to Los Angeles, Cal. That the said defendant, Atchison, Topeka & Santa Fe Railway Company, as a common carrier for hire, on or about said date, accepted said personal property, and undertook to carry same from Kansas City, Mo., to Los Angeles, Cal., and to redeliver same to plaintiff, or his agent, at Los Angeles, Cal. *That defendant Atchison, Topeka & Santa Fe Railway Company has never redelivered said personal property or any part thereof, to plaintiff or his agent at Los Angeles, Cal., or at any other place.* That on or about date aforesaid the defendants placed the said personal property in an inclosed freight car of the defendant railway company at Kansas City, Mo., along with other property, including other automobiles and equipment. That thereafter defendants, their agents and employees, entered said freight car for the purpose of preparing said property for shipment, and *negligently carried a lighted lantern in said freight car, and negligently undertook to drain and remove the gasoline from one or more of the automobiles in said car while said lighted lantern was near by,* when they knew, or by the exercise of ordinary care should reasonably have anticipated, that there was imminent danger of said gasoline and the gas, vapor and fumes therefrom becoming ignited by the flame in said lantern, and imminent danger of a dangerous explosion and fire directly resulting therefrom which would cause damages to the property in said car, including plaintiff's property. . . ."

It is further alleged that while so acting, with a lighted lantern nearby, the gasoline and gasoline vapor became ignited by the flames of the lantern and thereby caused an explosion, which directly caused the loss of said automobile. In submitting the case to the jury the plaintiff abandoned the theory of recovery based on negligence and undertook to submit the case solely on the insurer theory. In the majority opinion of the Kansas City Court of Appeals, it is stated that:

"Defendant strenuously insists that plaintiff, having alleged specific acts of negligence following the allegations bringing the cause under the insurer theory, is bound by the specific acts alleged and must be held to have abandoned the insurer theory. Defendant cites in support of the contention cases holding that, where plaintiff pleads general acts of negligence, followed by specific acts he cannot rely on the former, but must prove and submit his case on the latter. We do not think these cases are in point. The cause of action under the insurer theory is based upon contract and not negligence, either general or specific."

In the dissenting opinion of Judge TRIMBLE, the following appears:

"Originally the case was against the warehouse company and the railroad company, based upon specific acts of negligence charged against both defendants. At the close of plaintiff's evidence he dis-

missed as to the warehouse company and amended his petition, intending apparently (judging from the course thereafter pursued), to state a cause of action against the railroad company, based upon its common-law liability as a carrier." (The amendment referred to appears in the sentence first italicized above.) "The specific acts of negligence charged in the original petition remained in the petition as amended."

Continuing, Judge TRIMBLE said:

"Whatever may have been the pleader's intention, it seems to me that the amended petition still states a case based on negligence. The general allegation, that the railroad failed to redeliver the property to plaintiff, is followed by allegations charging specific negligence whereby the property was destroyed, thus disclosing the wrong done, and why the property was not redelivered. The situation is similar to that wherein a petition alleges negligence in general terms, and follows this with charges of specific negligence. In such case, the cause of action stated is based upon and must be confined to the specific acts of negligence alleged. This is well settled. *The petition, therefore, bottoms the case on negligence, and consequently the submission must follow the case as pleaded.* [Cloyd v. Wabash R. Co. (Mo. App.), 240 S. W. 885, and cases cited.]"

The case was certified to the Supreme Court on the ground that the majority opinion was in conflict with *Witting v. Railroad,* 101 Mo. 631, 14 S. W. 743, and *Standard Milling Co. v. Transit Co.,* 122 Mo. 258, 26 S. W. 704. The Supreme Court, after reviewing the last named cases, with which the majority opinion of the Kansas City Court of Appeals was said to be in conflict, held as follows:

"In the case we have before us the plaintiff, as in the Milling Co. case, not only averred the receipt of the goods by the railroad company as a common carrier, and a failure to deliver same, but undertook to allege what had become of the property, *and that it was lost by fire through the negligence of the carrier. It was therefore incumbent upon the plaintiff to prove the negligence he charged.* It follows that the opinion of the majority of the Court of Appeals, is in conflict with the foregoing cases decided by this court, and therefore it must be quashed insofar as it holds said amended petition stated a cause of action independently of the allegations of negligence therein contained."

In *Ozark Fruit Growers' Assn. v. St. L. S. F. R. Co. et al.* (Springfield Court of Appeals), 46 S. W. (2d) 895, plaintiff sought to recover damages to a carload of strawberries shipped from Everton, Missouri, to Topeka, Kansas. The petition alleged that the berries were delivered to the Frisco Railroad, the initial carrier, on May 20, 1927, in good, sound, merchantable condition, and that:

"The defendants, through their agents and servants, were negligent

in this, to-wit, that they failed to deliver said berries in Topeka, Kansas, on a reasonable scheduled time in a good, sound, merchantable condition, but delivered them in a deteriorated, decayed and moulded condition, and said berries were badly damaged and arrived too late for the market on May 21, 1927.''

The defendants contended that the suit was not based on common-law liability of the carriers as insurers, but that since the plaintiff in its petition alleged negligence it could recover only upon the proof of said negligence. In passing upon this contention, the court said (l. c. 896):

''It appears to be settled in this state that, even when the facts will permit a suit against a common carrier as an insurer of freight transported by it, *yet, if the pleader alleges negligence, he must stand upon his allegations and prove the negligence alleged or fail.*''

From the foregoing authorities, the rule seems to be settled in this state that where a petition alleges receipt of goods by a common carrier and its failure to deliver them under its contract of carriage, and also alleges that the goods were lost or damaged in a particular way through the negligence of the carrier, it then becomes incumbent upon plaintiff to prove the negligence as charged. In other words, in cases wherein recovery is sought against a common carrier on its common-law liability, it may be had upon the insurer theory and negligence need not be alleged, but under the rule as laid down by the Supreme Court, and other courts of this state, if the plaintiff goes further and alleges negligent acts of the carrier as the cause of the loss, such negligence must be proved.

In undertaking to defend instruction ''A'' against this charged error, plaintiff relies upon the case of *State ex rel. St. L. B. & N. Ry. Co. v. Taylor*, 251 S. W. 383. An examination of this case discloses that it in no wise conflicts with the rule laid down by the Supreme Court of Missouri in the case of *State ex rel. v. Trimble, supra.* In the *Taylor* case, it is stated that:

''There is nothing in the allegation that (quoting from plaintiff's petition) 'in violation of its common-law duty as a common carrier the defendant transported the said shipment so negligently and carelessly' that said shipment arrived at destination spoiled, etc., *which confines the plaintiff to proof of negligence of relator upon its own railroad line. There is no allegation that the negligence occurred while the shipment was on the line of relator.* For anything appearing in the petition, the damage may have been caused while the shipment was on the line of a connecting carrier outside of Texas.''

This language, and no other language in the case, conflicts with or modifies the rule that negligence when alleged in such a case must be proved. On the contrary, the inference is that if alleged it must be proved. We call attention to the further language in the *Taylor*

opinion, to illustrate that the case is not in point—that the court was not in anywise dealing with the point discussed here:

"Nor is the situation changed by the fact that the petition alleges the loss was occasioned by carelessness and negligence and in violation of the common-law duty of relator as a common carrier. Such negligence is clearly within the Carmack Amendment. It does not change the common-law duty of the carrier. *Plaintiff need not have alleged that the loss was due to negligence. All that was necessary was to allege the delivery of the shipment to relator in good, sound condition and its delivery at destination in bad condition.* The carrier is liable under the common-law for all loss or damage not caused by the act of God or the public enemy, unless due to the inherent nature or quality of the shipment or the fault of the shipper or owner. [10 C. J. 110.] With the foregoing exceptions the carrier is answerable in damages for loss incurred en route, including its own negligence. The Carmack Amendment makes the acts of connecting carriers the acts of the receiving carrier and their negligence its negligence so far as the shipper or owner is concerned. *Our conclusion is that the petition sufficiently alleged facts* (which included allegations of negligence) *which, if proven,* would compel relator to respond in damages for loss occurring upon the lines of its connecting carriers, as well as upon its own line, and that the petition, absent definite allegation that the damage occurred on relator's line of railroad, states a cause of action under the Carmack Amendment."

The instruction is erroneous in the particular thus charged.

Defendant contends instruction "A" is erroneous on another ground. By said instruction the court instructs the jury that if "the Walton (plaintiff) goods were turned over by the plaintiff to the A. B. C. Fireproof Warehouse Company and accepted by them for transportation to Joplin, Missouri, then the A. B. C. Fireproof Warehouse Company became the insurer of said goods and guaranteed their safe delivery to the consignee, Walton, at Joplin, Missouri. . . ." This is a correct declaration of law only upon the further condition that the A. B. C. Fireproof Warehouse Company was a common carrier and received the goods in question as such common carrier. It was defendant's contention that it received the goods as a warehouseman, and that in delivering the goods to the Sunflower Lines for transportation from Kansas City to Joplin it was acting merely as the agent of the plaintiff. There was evidence to the effect that the plaintiff directed the defendant, A. B. C. Fireproof Warehouse Company, to select a transportation company for the purpose of transporting the goods to Joplin, and on the basis of this testimony the court, on behalf of defendant, gave instruction 3, which is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff directed the defendant A. B. C. Fireproof Warehouse Company to select a transportation company for the purpose of transporting plaintiff's goods to Joplin, Missouri, and if you further find and believe from the evidence that defendant A. B. C. Fireproof Warehouse Company used ordinary care and diligence in selecting the Sunflower Lines, Inc., then your verdict will be in favor of the defendant A. B. C. Fireproof Warehouse Company."

Clearly, therefore, the question as to whether or not said defendant A. B. C. Fireproof Warehouse Company received said goods as a common carrier for transportation to Joplin was an issue of fact which must be determined by the jury. Upon this question there was evidence from which the jury might find either way. Under such circumstances the rule controlling is stated in Collier v. Storage & Moving Co., 147 Mo. App. 700, l. c. 718, as follows:

". . . it is a question of law for the court to determine as to what constitutes a common carrier, *but it is a question of fact for the jury to determine whether the defendant charged as a common carrier is within that definition and is carrying on his business in that capacity.*"

An instruction which purports to cover the entire case and direct a verdict must hypothesize every fact essential to plaintiff's right of recovery, and a failure to do so constitutes reversible error. [Jones v. Railroad (K. C. Court of Appeals), 50 S. W. (2d) 217, l. c. 220.] And in Cassin v. Lusk, 277 Mo. 663, l. c. 673, 210 S. W. 902, l. c. 905, the court held that:

"It is the established rule in this State, that an instruction which purports to cover the entire case and direct a verdict, must contain within itself a submission of all the issues upon every phase of the evidence, and any failure on the part of the first instruction in that respect would have been reversible error."

Plaintiff contends, however, that instruction 3 given on behalf of the defendant, as set out above, cures the error in instruction "A." But this is not the law. Continuing the quotation from Cassin v. Lusk, *supra,* at page 674, the court says (referring to the rule with reference to an instruction covering the entire case and directing a verdict):

"But such is not the rule applicable to instructions directed only to particular phases of the evidence or particular issues. Instructions of the latter kinds are correctible or supplementable by any other instructions given in the case, all of which must be considered together by the jury in arriving at their verdict."

Likewise, the rule is declared in Hengelsberg v. Cushing (St. L. Court of Appeals), 51 S. W. (2d) 187, l. c. 189, wherein the court said:

"The instruction thus assumes the truth of a controverted and essential element necessary as a prerequisite for a verdict in plaintiff's favor. [Citing cases.] This error could not be cured by an instruction given for plaintiff or for the defendant, which properly instructed the jury upon the controverted fact assumed and this for the reason that said instruction No. 2 covers the entire case and directs a verdict. [Citing cases.] The giving of instruction No. 2 was error prejudicial to the rights of defendant. . . ."

Plaintiff, in support of its contention that any defect in instruction "A" is cured by instructions given on behalf of defendant, cites the case of McDonald v. K. C. Gas Co., 59 S. W. (2d) 37, and quotes a paragraph from page 40 of the opinion. From the paragraph referred to by plaintiff, we call attention to the following language:

"Therefore, if the plaintiff's instruction, covering the whole case and authorizing a verdict, *does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading,* then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite. When all of the instructions thus harmonize and when read together correctly state the law, any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instructions." (Italics ours.)

The italicized language clearly discloses that the McDonald decision is not in conflict with the authorities hereinabove referred to, and that it does not support plaintiff's contention. The decision in the McDonald case is dealing with an instruction covering the whole case and authorizing a verdict, but *which does require a finding of all essential elements.* It merely holds that where an essential element so appearing in the instruction may be indefinite or ambiguous, such indefiniteness or ambiguity may be cured by other clarifying instructions. It does not hold, however, that the omission of an essential element from an instruction covering the whole case and directing a verdict can be cured by other instructions. We hold, therefore, that instruction "A" is erroneous because of its failure to require the jury to find an essential, disputed fact.

Complaint is also made that instruction "A" incorrectly states the rule as to the measure of damages for goods lost in shipment. The instruction directs that in case of verdict for plaintiff, the jury should find "in such amount as is the fair and reasonable market value of the goods lost and destroyed." The general rule in this state as to the measure of damages for goods lost in transit is the value of the goods at the place of delivery and at the time when said goods should have been delivered, less the freight charges if such charges

have not been paid. In this case the charges had not been paid as between the plaintiff and defendant A. B. C. Fireproof Warehouse Company. The record contains evidence as to what these charges were and, hence, the instruction should have directed deduction of the charges of carriage from the value of the goods at point of destination. This was specifically held in Klingenberg v. Davis, 268 S. W. 99, l. c. 102. The same rule is announced in Ward v. American Railway Express Co. (St. L. Court of Appeals), 259 S. W. 514, l. c. 517. This rule is modified somewhat, however, in the case of goods which cannot be said to have a definite market value. In the case of Wilson v. St. Louis, S. F. Ry. Co., 108 S. W. 612, 129 Mo. App. 347, it is held that the market value at destination, less cost of carriage, is the proper measure of damages if the goods have such a market value, but if they do not have a market value, then the measure of damages may be shown by the reasonable value as disclosed by the evidence. Furthermore, in the case of furniture and furnishing goods having no specific market value, it was held in the case of Ross v. Chicago, R. I. & P. R. Co., 95 S. W. 977, 119 Mo. App. 290, that it was proper to admit evidence as to the value of the furniture at the place of shipment.

Defendant assigns as error the admission of evidence of Mrs. Walton, the wife of plaintiff, as to the value of the articles of furniture and furnishings which were lost, on the ground that she did not testify that she knew the values. Her testimony discloses that she had a sufficient knowledge of values of the articles lost to testify with respect to same. Her testimony was dealing with common household articles which had been used for varying periods of time. You could scarcely say that such goods had a definite market value. The admission of the testimony of Mrs. Walton was not erroneous.

The trial court correctly refused defendant's instruction in the nature of a demurrer to the evidence. The record discloses sufficient evidence to go to the jury under proper instructions.

Defendant also complains of error in the court's refusal of defendant's instructions 1, 2, 4, 5 and 6.

By instruction 1 the court was asked to direct the jury that the A. B. C. Fireproof Warehouse Company was acting merely as a public warehouseman and, as such, was liable only for loss caused by the failure to exercise such care as a reasonably careful owner of similar goods would exercise. This instruction ignores all of the testimony from which a jury might find that the A. B. C. Fireproof Warehouse Company received the goods as a common carrier for delivery to Joplin, Missouri. It thus assumed a disputed fact which it was the duty of the jury to determine, and hence was properly refused.

Instruction 2 submits the theory that the defendant, A. B. C. Fire-

proof Warehouse Company, merely acted as the agent of the plaintiff in selecting a carrier to transport the goods to Joplin, but it omits a stoutly contested issue as to whether the defendant was authorized to value the goods at 10c per pound. Even if the jury should find the facts support defendant's agency theory, defendant would not be relieved from liability if the jury further found that this act in so valuing the goods was done without authority and that loss resulted from such unauthorized act. The court, therefore, properly refused instruction 2. Instruction 4 is subject to the same objection.

Instruction 5 is as follows:

"The court instructs the jury that if you find and believe from the evidence that defendant A. B. C. Fireproof Warehouse Company was authorized and directed to forward to plaintiff at Joplin, Missouri, plaintiff's goods, that then you may find defendant A. B. C. Fireproof Warehouse Company liable for loss if any resulting from the fault and negligence of the A. B. C. Fireproof Warehouse Company itself."

The instruction as worded is not clear. If the jury should believe the evidence supporting plaintiff's contention that the goods were delivered to the A. B. C. Fireproof Warehouse Company as a common carrier to transport them to Joplin, they might understand that this finding was consistent with a finding that the company was "authorized and directed to forward" the goods to plaintiff at Joplin, Missouri. In other words, the instruction does not clearly exclude the plaintiff's theory on which liability may be predicated. The instruction was properly refused.

Instruction 6 submits defendant's theory that it received the goods as the agent of plaintiff, merely to arrange for the shipment thereof, concluding with the following language:

". . . and if you further find and believe from the evidence that defendant, A. B. C. Fireproof Warehouse Company, used ordinary care and diligence in its selection of the transportation *and in the fixing of the rate of loss,* then your verdict will be for the defendant, etc."

Care and diligence "in the fixing of the rate of loss" are not the test of non-liability. It is a question of the *authority of the defendant to value the goods,* and if the A. B. C. Fireproof Warehouse Company, as agent of the plaintiff, valued the goods at 10c per pound without any authority so to do, and as a result thereof plaintiff suffered loss, defendant cannot escape liability on the ground of ordinary care and diligence in valuing the goods. The instruction was properly refused.

For the errors herein pointed out, it follows that the judgment should be reversed and the cause remanded. It is so ordered. All concur.